OPINION OF THE COURT
Kenneth R. Fisher, J.
Before the court is plaintiffs notice of motion seeking an or *243 der: (1) awarding temporary maintenance; (2) awarding counsel fees; and (3) directing that defendant contribute the sum of $500 per month toward the monthly payment on the note to discharge the parties’ chapter 13 plan. Defendant cross-moves for an order: (1) that plaintiff bring all delinquent mortgage (principal, interest, taxes, insurance) payments current for the marital residence and pay the mortgage until the closing and transfer of title to the marital residence; (2) granting exclusive use and occupancy of the marital residence; (3) directing that plaintiff reimburse the defendant for the difference in cost between an individual and two-person medical insurance plan; and (4) directing that the plaintiff pay interim attorneys’ fees to the defendant.
The parties were married on July 4, 1981, and have been living apart since June of 2010. There are no unemancipated children of the marriage. Defendant resides at the marital residence at 60 Ramblewood Drive, North Chile, New York, and plaintiff resides with his cousin at 18 Hunts Point, Rochester. Plaintiff contends that he paid the mortgage at the marital residence until June 2013 when his attorney advised him to stop paying. (Aff of Lawrence J. Dachille, Nov. 15, 2013 [plaintiffs aff], ¶ 41.) Plaintiff alternately asserts that he stopped paying because defendant’s boyfriend “barred” him from the marital residence (plaintiffs aff ¶ 16), and because he could no longer afford to pay the mortgage payments, $1,534, and the chapter 13 plan payments of $2,020 per month. (Plaintiff’s aff ¶ 23.[1] Plaintiff contends that, between 2008 and early 2012, he made 35 plan payments without contribution from defendant. Plaintiffs counsel avers that he instructed his client to cease making mortgage payments. (Affirmation of Thomas A. Corletta, Esq., Nov. 15, 2013, ¶ 15.) Plaintiff and counsel reason that the home is underwater because $146,335 is owed on the mortgage and the marital residence is assessed at $138,900. Plaintiff asserts that the marital residence is in disrepair.
The parties entered chapter 13 bankruptcy in 2008, and the chapter 13 plan was confirmed on November 2, 2009. The plan called for the parties to pay $121,000 in 60 payments of $2,020. On August 29, 2012, plaintiff borrowed $53,262.72 from his cousin to pay off the balance of their bankruptcy plan. The *244 bankruptcy estate closed August 2, 2013. (See plaintiffs aff, exhibit M.)
Defendant asserts that plaintiff handled all the finances for 29 years of their marriage and refused to keep her informed as to their financial condition. She asserts she was horrified to discover they were $120,000 in debt in 2008 and were forced to file bankruptcy. Defendant asserts that, due to marital discord in 2010, plaintiff declared that if defendant did not move out of the marital residence, then he would. Defendant asserts that the home is in no worse shape than when plaintiff vacated in 2010.
Defendant avers that she has not consulted an appraiser or realtor, but she believes their home could be sold for more than the assessed value, at least enough to break even. She asserts that plaintiffs decision to stop paying the mortgage and let the house go to foreclosure was made without consulting her and she fears the damage to her credit. Defendant asks that plaintiff consent to list the house and that the court so order this on consent of the parties.
Defendant contends that before plaintiff moved out, they resided in the marital residence with two of their adult children and their families. She asserts that they agreed he would pay the mortgage and she would pay the groceries and utilities. Further, she asserts that the parties jointly contributed to the bankruptcy payments together, and that the payments came from a joint account into which they both deposited their income, until June 2010. She asserts that after they separated, plaintiff agreed to make the payments as he lived rent free with his cousin. Defendant asserts that plaintiff earns $5,500 per month in net income and that she earns only $3,200 in net income.
She asserts that the loan from the cousin was without her knowledge. She notes that plaintiff signed the note August 29, 2012, and that she did not sign until February 22, 2013, when she learned of the existence of the loan. She acknowledges that this loan, to the extent funds were used to discharge their bankruptcy, is marital debt.
Maintenance
Plaintiff here seeks maintenance from defendant. Plaintiff receives $2,004 per month ($24,048 annually) in Social Security disability benefits, $2,973 per month in veterans’ disability benefits ($35,676 annually), and a postal workers’ pension of $436.18 monthly ($5,234.16 annually). That is $5,413.18 per *245 month or $64,958.16 per year. Defendant earned $64,110 in 2012 from her job as supervisor with the United States Postal Service, together with a modest amount of deferred income.
Plaintiff contends that the court cannot consider his veterans’ disability benefits as income to him. The court does not agree. Section 236 (B) (5-a) (c) of the Domestic Relations Law provides the formula to calculate the presumptively correct temporary maintenance award amount. “Income” for purposes of the formula means income as defined in the Child Support Standards Act, codified at section 240 of the Domestic Relations Law. That statute provides that disability benefits, veterans’ benefits and pension benefits must be included in gross income. (Domestic Relations Law § 240 [1-b] [b] [5] [iii].) Accordingly, plaintiff’s income would be $64,958.16 per year. Defendant’s income, minus FICA of $4,904 would be $59,206.
There is no need here to perform any calculations. The temporary maintenance guidelines, by design, “only result in an award when there is an income gap between the two parties such that the less-monied spouse’s income is less than two thirds of the more monied spouse’s income.” (Assembly Introducer Mem in Support, Bill Jacket, L 2010, ch 371 at 14.)
The court does not find that 10 USC § 1408 or the authority cited in Alvarado v Alvarado (38 Misc 3d 1211[A], 2013 NY Slip Op 50077[U] [Sup Ct, Richmond County, Jan. 15, 2013]), relied upon by plaintiff, prevents consideration of veterans’ disability benefits for the purposes of determining plaintiff’s income when considering his application to receive temporary maintenance from defendant. The Federal Uniformed Services Former Spouses’ Protection Act (USFSPA) (10 USC § 1408) displaces the total preemption ruling concerning federal military retirement benefits in McCarty v McCarty (453 US 210 [1981]). Under USFSPA, Congress authorized state courts to distribute, with certain limitations not relevant here, disposable retired pay in a divorce proceeding. (10 USC § 1408 [a] [2] [C]; [a] [4].) Thereafter, in Mansell v Mansell (490 US 581 [1989]), the Supreme Court further limited the authority of a state court by prohibiting distribution of disposable retired pay which constitutes that portion of retired pay that has been waived under 38 USC § 5305 to receive veterans’ disability benefits. (Id. at 594-595 [USFSPA “does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans’ disability benefits”].)
It should be underscored at this point that neither Mansell nor 10 USC § 1408 have anything to say about the proper *246 calculation of income for purposes of temporary or permanent maintenance, especially as it concerns the putative payee or recipient of maintenance. The federal scheme purports only to concern the division of future benefits upon equitable distribution, or an order directing that alimony or maintenance be paid out of veterans’ disability payments. Rather, the statute addresses whether any final divorce decree orders payment of a portion of either disposable military retirement pay, which is permissible, or veterans’ disability payments that result from a waiver, which under Mansell is not permissible.[2] It would be a perverse application of the statute and Mansell to hold that the tax free disability benefit (Mansell v Mansell, 490 US at 583-584 [“military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income”]) is exempt from consideration when the question is whether the veteran should receive alimony or maintenance from the nonmilitary former spouse. The USFSPA was, after all, designed to displace *247 the total federal preemption imposed by McCarty in favor of protecting the spouse or former spouse of a military retiree.
The state cases upon which plaintiff relies do not require a different result. First, Newman v Newman (248 AD2d 990, 990 [4th Dept 1998]) declares VA disability benefits as “separate property,” and thus is an equitable distribution case, as is Hoskins v Skojec (265 AD2d 706, 707 n [3d Dept 1999] [USFSPA “authorizes State courts to allocate as marital or community property a veteran’s ‘disposable retired pay’ . . . (defined by) 10 USC § 1408 (a) (4) (B)(,) . . . (but) preempts the authority of State courts to consider veterans’ disability benefits as property divisible upon termination of a marriage” (emphasis supplied)]).
The fly in the ointment comes from Carl v Carl (58 AD3d 1036 [3d Dept 2009]) and the cited Alvarado case, which relied on Carl for the maintenance observation. The word “observation” is used because in neither case was the reference to maintenance, as it juxtaposed with veterans’ disability benefits resulting from the above described waiver, necessary to the decision. In Carl, the Court held that income from a private disability insurance policy, conceded to be separate property, must be considered in the maintenance calculus. (58 AD3d at 1037 [“the fact that a portion of that income is derived from an asset determined to be separate property not subject to equitable distribution does not render that income immune from consideration in calculating a party’s maintenance obligation”].) In a footnote, however, the Court stated that veterans’ disability payments “would otherwise be precluded from consideration with respect to maintenance” (58 AD3d at 1038 n, citing 10 USC § 1408, and Hoskins v Skojec). Inasmuch as the Court was not dealing with a veteran, or a veteran’s retirement or disability payments, the observation was entirely unnecessary to the decision and therefore dictum. Indeed, as shown above, such a categorical “preclusion] from consideration with respect to maintenance” cannot be supported by reference to the USFSPA or Hoskins.
Second, in the Alvarado case, the husband moved for an order declaring that, inter alia, his veterans’ disability payments are exempt from consideration for purposes of maintenance. Relying on Carl, the court agreed. Thus considered, Alvarado stands on no better authority than Carl itself for the proposition advanced. In addition, the procedural posture the court faced in Alvarado compromised its persuasive force. No application for temporary maintenance was made in that case, and the *248 court acknowledged that the issue of maintenance would be reserved to trial. Nevertheless, the court converted the motion to one “in limine to limit the issues to be adjudicated at trial” (38 Misc 3d 1211[A], 2013 NY Slip Op 50077[U], *2) and determined it as set forth above. Because such a motion in limine had the effect of limiting the issues and facts to be tried, it was, as the Appellate Divisions have consistently found, a poor substitute for a motion for summary judgment. (O’Donnell v Ferguson, 100 AD3d 1534, 1535-1536 [4th Dept 2012]; and see especially Scalp & Blade, Inc. v Advest, Inc., 309 AD2d 219, 224 [4th Dept 2003].) Therefore, the court views the Alvarado “precedent” as of limited probative value.[3]
Even if the court did not consider such income to plaintiff for purposes of the temporary guideline calculation, it would find any resulting guideline award to plaintiff unjust and inappropriate. Section 236 (B) (5-a) (e) (1) provides that “[t]he court shall order the presumptive award of temporary maintenance in accordance with paragraphs c and d of this subdivision, unless the court finds that the presumptive award is unjust or inappropriate and adjusts the presumptive award of temporary maintenance accordingly based upon consideration of the” factors enumerated therein. Notably, plaintiff has maintained a predivorce separate household for more than three years prior to the commencement of this action. (Domestic Relations Law § 236 [B] [5-a] [e] [1] [g].) Plaintiff further has not presented any argument that he is in need of support or that he is now living below the marital standard of living. (Domestic Relations Law § 236 [B] [5-a] [e] [1] [a].) Plaintiffs application fails to address how he could afford to pay the mortgage and make the chapter 13 payments from June 2010 through August 2012, $3,554 ($1,534 + $2,020), and then beginning August 29, 2012, only $2,534 (the mortgage plus the $1,000 per month note to the cousin, replacing the chapter 13 plan), and beginning June of 2013, just the note at $1,000, but now requires temporary spousal support.
*249 Rather, according to plaintiff, “[t]his motion has been necessitated by Defendant’s unwarranted threats of Temporary Maintenance Motion through her attorney, which are groundless and borderline frivolous.” (Plaintiff’s aff ¶ 4.) By “unwarranted threats” plaintiff refers to a letter from defendant’s counsel which requests that plaintiff resume paying the mortgage on the marital residence as he did until June 2013. The letter provides that a settlement offer is forthcoming but that the house should be listed for sale and that plaintiff should resume making the mortgage payments as he did from June 2010 through June 2013. If there could be no agreement to list the house or to resume the mortgage payments, a motion would be brought. The court does not consider this an unwarranted threat as it merely sought to restore the status quo.
Plaintiffs application for temporary maintenance is denied. Further, the court denies plaintiffs application that defendant contribute $500 per month toward the note to the cousin. The debt of the parties shall be distributed at the time of judgment. The court has no power to distribute this debt prior to final judgment without agreement of the parties.
Similarly, the court orders plaintiff to bring current and pay the mortgage on the marital residence as both parties intend to sell the residence. The court will apportion any proceeds or debt considering all the facts and circumstances as presented here and developed at trial.
Exclusive Use and Residency
“Courts are statutorily empowered to grant one spouse temporary exclusive use and occupancy of the marital residence during the pendency of divorce proceedings (see Domestic Relations Law § 234)” (Taub v Taub, 33 AD3d 612, 612 [2006]). “Exclusive occupancy of a marital residence by one party, pendente lite, is warranted only: (1) when needed to protect the safety of persons or property; or (2) when the nonmovant spouse has voluntarily established an alternative residence and that spouse’s return to the marital residence would cause domestic strife.” (Kenner v Kenner, 13 AD3d 52, 53 [1st Dept 2004] [citations omitted].)
Although it appears plaintiff vacated the marital residence voluntarily, there are insufficient allegations that his return would engender strife. In fact, it appears that plaintiff has no intention of returning to the marital residence. “An award of exclusive occupancy must be based upon incidents that *250 exceed petty harassments such as the hostility and contempt admittedly demonstrated herein that are routinely part and parcel of an action for divorce.” (Estis v Estis, NYLJ, Oct. 4, 2002, 2002 NY Misc LEXIS 2028, *8 [Sup Ct, Nassau County 2002].)
Finally, there are no allegations here that plaintiff is a danger to defendant. Exclusive use and occupancy is denied.
As to the parties’ applications for interim counsel fees, Domestic Relations Law § 237 (a) provides a presumption that the monied spouse pay interim counsel fees to ensure that each side is adequately represented. As the statute provides, “[a]n award of an attorney’s fee ... is a matter within the sound discretion of the trial court, and the issue is controlled by the equities and circumstances of each particular case.” (Grant v Grant, 71 AD3d 634, 634-635 [2d Dept 2010] [internal quotation marks omitted], quoting Gruppuso v Caridi, 66 AD3d 838, 839 [2d Dept 2009], quoting Morrissey v Morrissey, 259 AD2d 472, 473 [2d Dept 1999].) In addition, “[a]n award of interim counsel fees is designed to create parity in divorce litigation by preventing a monied spouse from wearing down a nonmonied spouse on the basis of sheer financial strength.” (Rosenbaum v Rosenbaum, 55 AD3d 713, 714 [2d Dept 2008].) There is substantial parity here between the parties’ incomes and the court does not perceive that either party has an advantage over the other “on the basis of sheer financial strength.”
The cross motion for an order directing that plaintiff reimburse the defendant for the difference in cost between an individual and two-person medical insurance plan is granted using the 2014 figures handed up to court at oral argument.

. Plaintiff asserts that he is also providing substantial support to his 31-year-old son with two children and 29-year-old daughter with one child, who all reside with him and his cousin. He also asserts he provides support for his 27-year-old son. Defendant also avers that she provides support to the adult children.

. It is also important to point out that plaintiffs application does not establish that his veterans’ disability payments resulted from the waiver contemplated by 38 USC § 5305. In Repash v Repash (148 Vt 70, 528 A2d 744 [1987]), the Vermont Supreme Court rejected the veteran’s contention that his service-related disability benefits could not be considered in the maintenance calculus, in part because his “disability payments were not received in lieu of retirement pay.” (148 Vt at 74, 528 A2d at 746.) Without any proof that the waiver contemplated by 38 USC § 5305 was executed in the manner provided by statute, plaintiff does not establish, prima facie, that his benefits are covered by 10 USC § 1408 (a) (4) (B). For the reasons stated in the text, however, he would not succeed in his argument even if such proof was in the moving papers.
It must also be observed that the Repash court also held that the anti-attachment provision, 38 USC former § 3101 (a), now § 5301 (a), “precluded] an assignment or apportionment of plaintiffs veteran disability benefits, [but] it does not preclude consideration of disability benefits by a trial court as a source of income upon which an award of alimony may be based.” (Repash, 148 Vt at 73, 528 A2d at 745.) To the same effect, see Allen v Allen (650 So 2d 1019, 1020 [Fla Dist Ct App, 2d Dist 1994] [section 1408 “does not preclude an award of alimony against the spouse receiving disability pay and, once awarded, does not relieve the paying spouse from paying such alimony obligations, even though (as in this case) most of the paying spouse’s income consists of military retirement designated as disability”]); and Murphy v Murphy (302 Ark 157, 159, 787 SW2d 684, 685 [1990] [same, citing 10 USC § 1408 (e) (6)]), reaffirmed in Womack v Womack (307 Ark 269, 271, 818 SW2d 958, 959 [1991] [“he did not order a division and did not direct that alimony be withheld from Mr. Womak’s benefits”]). Although these cases involve the question whether the veterans’ disability benefits may be considered as income for purposes of determining the veteran’s obligation to pay alimony or maintenance, whereas in this case the question is whether such income may be considered on the issue whether the veteran is entitled to maintenance, their rationale applies a fortiori to this case.

. Nor does the court find that the distinction drawn between support applications applicable to intact marriages and support applications applicable in marriage dissolution proceedings, a distinction unnecessary to the decision in the case of Matter of Nizolek v Nizolek (93 AD3d 934 [3d Dept 2012]), persuasive. The Nizolek Court cited Family Court Act § 413 (1) (b) (5) (iii) which provides for consideration of disability and veterans’ benefits in the income calculus just as does the identical provisions of Domestic Relations Law § 240 (1-b) (b) (5) (iii). Accordingly, there was no state law basis for the distinction, and therefore no basis for the Alvarado court’s reliance on the distinction.